(No. 519█

KRUEGER CONSTRUCTION CO., INC., Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed October 19, 1972.*

FREDERICK R. PEFFERLE, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER and LEE MARTIN, Assistant Attorneys General, for Respondent.

BURKS, J.

This claim arises out of a contract entered into between the claimant and the respondent in 1959 for the resurfacing of the mile track and the half mile track at the Illinois State Fair Grounds in Springfield.

The amounts claimed are, allegedly, for additional

material deposited on the one mile track, the stockpiling and rehandling of material, and the blading of the half mile track. Claimant contends that these additions to the contract were made at the request of the respondent's Chief of Construction for the Department of Public Works and Buildings, Division of Architects and Engineers, or by the "associate engineers" employed by the State of Illinois for this project.

Only questions of fact are involved in this case. They relate to the following matters which are in dispute:

1. The quantity of dirt furnished by claimant to resurface the mile track;

2. Whether or not claimant is entitled to additional compensation for expenses incurred in stockpiling and rehandling some of the dirt;

3. Whether or not claimant is entitled to additional compensation for blading the half mile track.

These three areas of dispute must be resolved by a careful examination of the evidence in the record. We will summarize only the testimony presented which we regard as controlling on each of the three issues.

First, we consider the dispute between the parties as to the quantity of dirt furnished by claimant to resurface the mile track.

Mr. Orlando A. Krueger, Secretary of the claimant corporation, testified that he was the operations supervisor for the claimant and supervised the State Fairgrounds job. He said that the material placed on the tracks was taken from borrow pit sites selected by claimant and approved by the firm of Jenkins, Merchant and Nankivil, consulting engineers for the respondent. This firm is also referred to in the record as associate engineers.

Mr. Krueger testified that on the 6th of June, 1960, after the one mile track had been resurfaced, he made a cross-section of the borrow pits to determine the quantity of

material excavated from the pits and placed on the track. Using his field notes and a Frieden calculator, he calculated that claimant removed from the borrow pits and spread on the mile track 10,444 cubic yards of dirt. On the witness stand he explained his method of calculation and introduced into evidence his cross-sections and field notes which were the foundations for his calculations. (Claimant's Exhibits 1, 2, 3 and 4.)

No witness for the respondent attacked either the cross-sections or the field notes presented by Mr. Krueger. Mr. Carter Jenkins, one of respondent's associate engineers, testified that the State also made cross-sections of the borrow pits in July and August, 1960, and determined that 8,688 cubic yards of material were placed on the mile track. This is the figure allowed claimant by the associate engineers. The State's cross-sections were not introduced into evidence nor were the persons who made them called as witnesses. Mr. Jenkins merely testified that, according to the State's figures, 8,688 cubic yards of dirt were used and he denied claimant's contention that 10,444 cubic yards were used.

On re-direct examination Mr. Krueger testified that the State's cross-sections were made after the borrow pits had been flooded by a spring creek running through the area; that the flooding occurred on June 21, 1960; that it lasted for a week; that the flooding washed substantial quantities of material into the borrow pits, and that the State's cross-sections, made after such flooding, could not be used as a basis for determining the volume of dirt removed in the contract operations. This telling argument was not denied by the respondent.

There is sufficient evidence in the record to justify our finding that claimant did in fact furnish 10,444 cubic yards of dirt for the mile track rather than the 8,688 cubic yards

allowed by the State. We find that claimant has sustained the burden of proof on this point; that a total of 10,444 cubic yards of material was actually required, which is 1,756 cubic yards over and above that allowed by the associate engineers.

The written agreement between the parties was not a lump sum contract. It was a unit price contract calling for payment at the unit price for the quantities of materials actually used. At the agreed unit price of $2.20 per cubic yard, we find that the claimant should have been paid an additional sum of $3,863.20 for the additional 1,756 cubic yards of dirt actually used in the project.

The second area of dispute concerns the stockpiling and rehandling of material for the tracks, and whether claimant is entitled to additional compensation for this procedure.

Mr. Krueger testified for the claimant that on January 5, 6, 7 and 8, 1960, dirt was taken from the pits and stockpiled in the paddock area at the request of the respondent's associate engineers; that nothing useful was accomplished by this stockpiling; that it was uneconomical to do; that it involved using a machine to stack it up and make a pile of it, instead of dumping it directly on the track as claimant would normally do.

By invoice dated August 23, 1960, claimant billed the respondent for said additional work. The statement (claimant's Exhibit 11) showed a charge in the amount of $2,660.00 for rehandling 2,800 cubic yards of dirt; $316.80 for 176 hours of overtime; $47.52 for overhead; a total additional payment of $3,326.97 was requested by the claimant. There is an apparent error in the overhead item but this is not material to the main issue before us.

Mr. James N. Gaunt, who was respondent's Chief of

Construction for the Department of Public Works and Buildings at the time that the contract in question was being performed, was called as a witness and testified for the claimant. Mr. Gaunt's employment with the State having been terminated in 1962, he had no access to respondent's records when he testified at the hearing on July 1, 1965.

Mr. Gaunt said he did not believe that stockpiling of material was required by the contract; that the stockpiling procedure was ordered by a Mr. Carl Funk who worked for respondent's consulting engineers; and he gave the following answer to a question from claimant's attorney:

"Q And this was (stockpiling) a precautionary measure also to insure that the work would be completed by State Fair time?

"A Well, they had a great deal of it stockpiled. We had several good projects going on up in the northern part of the State, and I was up there part of the time. Then I took a vacation and when I came back the bulk of it was done. I questioned the associate engineer as to why they were doing it and he said he didn't want to get caught out there with the borrow pit full of water and not get done by Fair time. I said you obligated the State for a lot more cost. He said, Oh, hell, I don't care what it costs." (from transcript - page 55)

Mr. Gaunt's testimony was categorically denied by Mr. Carter Jenkins, member of the associate engineers, who testified for the respondent. Mr. Jenkins stated that no member of his firm authorized the stockpiling, and that claimant did it for his own convenience because the borrow pits selected were subject to flooding.

The following question by claimant's attorney and the answer by Mr. Jenkins appears at page 43 of the transcript of the second hearing:

"Q Mr. Jenkins, weren't you yourself concerned about the flooding of the borrow pits and so concerned that you, in fact, requested representatives of Krueger Construction Company to stockpile this dirt during periods of time that they could get into the borrow pit area?

"A No, sir, at no time whatsoever was it ever done by me or any of our representatives. We were surprised one day to find that he had started stockpiling operations. I believe that, under the specifications, the stockpiling would be permitted but would be included in the cost bid for the work to be performed."

Mr. Jenkins apparently had reference to the following section of the contract specifications:

"23025. If at the time of excavation, it is not possible to place material in its proper section of the permanent construction, and Supervising Architect so directs, it shall be stockpiled in approved areas for later use." (Claimant's Ex. 13, page RS-5)

The oral testimony in the record on this point at issue is completely contradictory. However, we do not need to weight the credibility of either witness to resolve this question.

Whether Mr. Jenkins' employee, Carl Funk, ordered the stockpiling or whether it was initiated by claimant, there is nothing in the contract documents to call for extra compensation for this work. In fact, we interpret the following section 23027 of the specifications to mean that payment at the contract unit price per cubic yard for the total of all material moved covers all aspects of the work.

"23027. Payment for excavation will be made at the contract price per cubic yard for the total of classified or unclassified material excavated and moved in accordance with the plans and specifications or as otherwise specifically directed by the Supervising Architect. The payment for excavation shall constitute full compensation for excavation, hauling, spreading and compacting material in embankment, smoothing graded surfaces, stripping vegetation, removal of all undesirable material, scarifying and recompacting ground surfaces under embankment and all other subsidiary grading operations not specifically set up in the contract as pay items including the furnishing of all labor, equipment, tools and incidentals necessary to complete the work."

The above section 23027 cannot be lifted out of context for purposes of interpretation. It must be read as an integral part of the entire contract and in connection with other provisions thereof which state conditions precedent to the allowance of any additional compensation. We refer to the following provisions under "General Conditions of the Contract":

"*ARTICLE 22: CHANGES IN THE WORK: (Para. 2)*
No change shall be made, unless in pursuance of a written order from the Supervising Architect, stating that the Owner has authorization for the change,

and no claim for an addition to the Contract shall be valid unless so ordered." (Claimant's Exhibit 13, p. 10)

"*ARTICLE 23: CLAIM FOR EXTRAS:*
If the Contractor claims that any instructions, by drawings or otherwise, involve extra cost under this contract, he shall give the Supervising Architect written notice thereof before proceeding to execute the work, and, in any event, within two weeks of receiving such instructions. No such claims shall be valid unless so made." (Claimant's Exhibit 13, p. 11)

Claimant failed to produce either a written order as required by Article 22 or the advance written notice before proceeding with the alleged extra work as required by Article 23. The absence of such required written evidence confirms our interpretation of section 23025 as stated above. Therefore, claimant's claim in the amount of $3,326.97 for stockpiling dirt must be denied.

The third and final issue of fact is whether or not claimant is entitled to additional compensation for blading the half mile track.

The record fully supports our finding that the blading of the half mile track was additional work authorized by respondent's Chief of Operations, James N. Gaunt, and that the work was done by the claimant at Mr. Gaunt's direction. The reason advanced for blading the half mile track was to get the horses off of the mile track while it was under repair and provide them with a place for training. The work was also requested by the Department of Agriculture.

Respondent's former Chief of Operations, Mr. James N. Gaunt, testified that $573.60 was a fair and reasonable charge for this additional work, and the court accepts his statement.

On the three issues presented in this cause, the court states its conclusion as follows:

1. That claimant should be awarded the sum of $3,863.20 for an additional 1,756 cubic yards of dirt used in

resurfacing the mile track as claimed in the complaint;

2. That claimant's claim for stockpiling dirt must be denied; and

3. That claimant should be awarded the sum of $573.60 for blading the half mile track, less the sum of $306.46 acknowledged by claimant to be an overpayment for cubic yards of dirt used on the half mile track.

Accordingly, the claimant, Krueger Construction Co., Inc., is hereby awarded the total sum of $4,130.34.