(No. 5895—

J. M. CORBETT Co., Claimant, *v.* THE STATE OF ILLINOIS, Respondent

*Opinion filed October 5, 1981.*

ROBERT V. HOGAN, for Claimant.

TYRONE C. FAHNER, Attorney General (SAUL WEXLER, Assistant Attorney General, of counsel), for Respondent.

HOLDERMAN, J.

On April 29, 1968, Claimant entered into a contract with Respondent for the furnishing of all materials, equipment, supplies, labor and services for constructing the St. Joseph Creek channel improvement, near the city of Lisle in Du Page County, Illinois. This work consisted primarily of the construction of a tunnel and culvert under the tracks of the Chicago, Burlington and Quincy Railroad, hereinafter referred to as the railroad.

Payment was to be made under the contract according to certain specified unit prices. The base contract plus extras amounted to $453,730.85. Of this amount, $412,725.00 has been paid by Respondent, and an order has been entered, pursuant to stipulation by the parties, granting the railroad $10,000.00. There is left due the sum of $31,005.85.

Claimant now contends it is due an additional $35,583.60 as compensation for additional labor and materials expended in implementing certain remedial measures. These measures, according to Claimant, involved the use of additional construction techniques which were employed at the direction of the railroad. The measures were necessary in order to rectify the track settlement, as well as to prevent the collapse of the tunnel roof which had occurred during construction. Claimant contends that payment for the additional labor and materials is allowable under Section 9—4 of the contract entitled "Payment for Extra Work."

The tunneling work commenced on October 31, 1968, and proceeded without difficulty until November 4, 1968, when a sink hole, or a depression, appeared in the soil constituting the railroad right-of-way. Since the tunneling was beginning to approach the track section, the railroad sought to implement certain techniques which would prevent more sink holes from developing. The railroad was apprehensive that the tunneling would cause the tracks to settle which would require a slowdown or complete stoppage of train service. On November 6, there was evidence of track settlement appearing.

On November 21, 1968, a meeting was held which was attended by representatives of Claimant, the railroad and the State Division of Waterways. At that meeting, it was resolved that Claimant implement some

of the measures proposed. One important measure was the installation of stronger poling plates which are used to prevent settlement of the soil above the excavation.

As the work continued and the tunneling approached the area beneath the tracks, more sink holes appeared and track settlement worsened. Due to the great number of trains to use this particular track, the railroad was very reluctant to take this track completely out of service, so they started a series of slowdowns on the railroad. They allowed a slow order of 25 miles per hour, down from a maximum of 70 miles per hour. Despite the slowdown, the track was closed on several occasions for short periods of time.

It is Respondent's contention that the major cause of the problems was over-excavation by Claimant. Because of over-excavation, the arch of the tunnel became distorted, necessitating the installation of timber supports which were then installed. The railroad, under Section 260—4 of the contract, was empowered to take these steps. Claimant, when asked to install the supports, contended it did not have the material on hand to meet this emergency.

Work resumed on December 13 but voids developed again. There was a sagging of the tracks, causing track number 2 to be taken out of service. The track was back in service on December 14, under a slow order of 10 miles per hour, and finally on December 20, it was reduced to 5 miles per hour. In the meantime, the track had settled so much that it had to be raised four inches.

· Work on a second tunnel, adjacent to the first tunnel, was begun on January 16, 1969. Poling plates, as well as all other additional measures, were employed in the construction of the second tunnel.

Under Section 9—4 of the contract, payment for extra work is to be made only if the work is approved in writing by the chief waterway engineer. Once approved, the State issues a B.C., or change order, which authorizes the contractor to go ahead with the extra work. Claimant did not secure a change order nor did it produce any writing showing approval of the work by the chief engineer.

Claimant places considerable reliance on a conversation that took place with the chief waterway engineer in which he stated that changes were being made and he would probably have to pay for them.

In the abstract of evidence before the commissioner, there is some very interesting testimony from Charles McColgin, a retired employee who had worked for the railroad for approximately 45 years. At the time he retired, he was an assistant bridge engineer in field construction and was very familiar with bridges and tunneling. He testified he had supervised between 20 and 25 tunneling jobs during his years with the railroad. He also testified that the foreman in charge of the tunneling job was familiar with this type of work but that this was actually his first job of tunneling. He further testified that the tunnel could have been safely completed without requiring the additional measures which were required only because the individual in charge did not have the experience required for this job.

The record is devoid of any evidence showing that Respondent agreed to any additional amount for so-called extra work.

This Court has previously held that where contracts have been entered into by and between the parties, and Claimant then performed additional work without ob-

taining a written order, no payment can be made for the additional work. *Krueger Construction Co. v. State of Illinois*, 28 Ill. Ct. Cl. 83.

It is the Court's opinion that Claimant has failed to prove that the additional costs incurred were extras which, under the terms of the contract, would allow Claimant to be reimbursed and, in addition, Claimant failed to secure the necessary written work order which would have allowed it to recover for the additional work.

An award is hereby entered in the amount of $31,005.85, which is the amount unpaid on the original contract.